1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16

| | |
|---|---|
| ELENA PALLESCHI,<br><br>          Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>          Defendant. | Case No. CV 15-4204 JC<br><br>MEMORANDUM OPINION AND<br>ORDER OF REMAND<br><br>[DOCKET NOS. 14, 18] |

17
18

**I.   SUMMARY**

19          On June 4, 2015, Elena Palleschi ("plaintiff") filed a Complaint seeking

20 review of the Commissioner of Social Security's denial of plaintiff's applications

21 for benefits.  The parties have consented to proceed before the undersigned United

22 States Magistrate Judge.

23          This matter is before the Court on the parties' cross motions for summary

24 judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  This

25 Court has taken both motions under submission without oral argument.  <u>See</u> Fed.

26 R. Civ. P. 78; L.R. 7-15; June 5, 2015, Case Management Order ¶ 5.

27 ///

28 ///

1   Based on the record as a whole and the applicable law, the decision of the

2   Commissioner is REVERSED AND REMANDED for further proceedings

3   consistent with this Memorandum Opinion and Order of Remand.

4   **II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5   **DECISION**

6   On May 19, 2009, plaintiff filed applications for Supplemental Security

7   Income and Disability Insurance Benefits alleging disability beginning on

8   September 1, 2008, due to left hand injury, mental impairment, attention deficit

9   disorder, and depression.  (Administrative Record ("AR") 93, 189, 196, 220).  The

10  Administrative Law Judge ("ALJ") examined the medical record and heard

11  testimony from plaintiff (who was represented by counsel) and a vocational expert

12  on May 31, 2011.  (AR 66-85).

13  On July 11, 2011, the ALJ determined that plaintiff was not disabled

14  through the date of the decision ("Pre-Remand Decision").  (AR 93-101).

15  On April 15, 2013, the Appeals Council granted review, vacated the Pre-

16  Remand Decision, and remanded the matter for further administrative proceedings.

17  (AR 108-10).

18  On July 29, 2013, the ALJ again examined the medical record and also

19  heard testimony from plaintiff (who was again represented by counsel), and a

20  vocational expert ("Post-Remand Hearing").  (AR 48-65).

21  On September 18, 2013, the ALJ again determined that plaintiff was not

22  disabled through the date of the decision ("Post-Remand Decision").[1]  (AR 15-26).

23  Specifically, the ALJ found:  (1) plaintiff suffered from the following severe

24  impairments:  left-hand injury – status post new injury with corrective surgery,

25  cervical arthritis, depression, bipolar disorder, and anxiety (AR 18); (2) plaintiff's

26

27  [1]The ALJ stated that the Pre-Remand Decision was fully incorporated by reference into,
    and thus supplemented by, the Post-Remand Decision, "except as specifically modified or further
28  discussed[.]"  (AR 15).

2

impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 18-19); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. §§ 404.1567(b), 416.967(b)) with additional limitations[2] (AR 19); (4) plaintiff was unable to perform any past relevant work (AR 23); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically office cleaner and storage facility clerk (AR 24-25); and (6) plaintiff's allegations regarding the intensity, persistence, and limiting effects of her subjective symptoms were not entirely credible (AR 20).

The Appeals Council denied plaintiff's application for review of the Post-Remand Decision.  (AR 1).

## III.    APPLICABLE LEGAL STANDARDS

### A.    Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

---

[2]The ALJ determined that plaintiff: (i) could lift/carry 20 pounds occasionally and 10 pounds frequently; (ii) could stand for 6 hours in an 8-hour workday; (iii) could sit for 6 hours in an 8-hour workday; (iv) could occasionally bend or stoop; (v) could do occasional fine and gross manipulation with her left non-dominant hand and arm; and (vi) was "further limited to simple, routine tasks with occasional contact with the public and coworkers."  (AR 19).

3

In assessing whether a claimant is disabled, an ALJ is required to use the following five-step sequential evaluation process:

(1)     Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)     Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)     Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)     Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

2006) (citing <u>Flaten v. Secretary of Health & Human Services</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. <u>Robbins</u>, 466 F.3d at 882 (citing <u>Young v. Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990)). To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).

While an ALJ's decision need not discuss every piece of evidence or be drafted with "ideal clarity," at a minimum it must explain the ALJ's reasoning with sufficient specificity and clarity to "allow[] for meaningful review." <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 492 (9th Cir. 2015) (citations and internal quotation marks omitted); <u>Howard v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted); <u>see also</u> <u>Craft v. Astrue</u>, 539 F.3d 668, 673 (7th Cir. 2008) (ALJ must provide "accurate and logical bridge" between evidence and conclusion that claimant is not disabled so reviewing court "may assess the validity of the agency's ultimate findings") (citation and quotation marks omitted); <u>see generally</u> 42 U.S.C.A. § 405(b)(1) ("ALJ's unfavorable decision must, among other things, "set[] forth a discussion of the evidence" and state "the reason or reasons upon which it is based").

An ALJ's decision to deny benefits must be upheld if the evidence could reasonably support either affirming or reversing the decision. <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457). Nonetheless, a court may not affirm "simply by isolating a 'specific quantum of supporting evidence.'" <u>Robbins</u>, 466 F.3d at 882 (citation omitted). In addition, federal courts may review only the

5

reasoning in the administrative decision itself, and may affirm a denial of benefits only for the reasons upon which the ALJ actually relied.  Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

Even when an ALJ's decision contains error, it must be affirmed if the error was harmless.  Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014).  An ALJ's error is harmless if (1) it was inconsequential to the ultimate nondisability determination; or (2) despite the error, the ALJ's path may reasonably be discerned, even if the ALJ's decision was drafted with less than ideal clarity.  Id. (citation and quotation marks omitted).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record.  Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).  When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate.  See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

## IV.   DISCUSSION

### A.   The ALJ Did Not Properly Consider Plaintiff's Mental Limitations

Plaintiff contends that the ALJ failed properly to account for all of her mental impairments supported by the record.  (Plaintiff's Motion at 3-7).  This Court agrees.  Since this Court cannot find the ALJ's error to be harmless, a remand is warranted.

#### 1.   Pertinent Background

On August 26, 2009, Dr. Norma R. Aguilar, a consultative state-agency psychiatrist, performed a Complete Psychiatric Evaluation of plaintiff which included a mental status examination.  (AR 346-50).  Based on her examination of plaintiff, Dr. Aguilar made the following functional assessment (collectively "Dr. Aguilar's Opinions"):

1    　　　The [plaintiff's] ability to follow simple oral and written

2    instructions was not limited.  Her ability to follow detailed

3    instructions [w]as not limited.  Her ability to interact with the public,

4    coworkers and supervisor was moderately limited.  The claimant's

5    ability to comply with job rules, such as safety and attendance, was

6    mildly limited.  Her ability to respond to changes in a routine work

7    setting was mildly limited.  Her ability to respond to work pressure in

8    a usual working setting was moderately limited.  Her daily activities

9    were not limited.

10   (AR 349).  In the Post-Remand Decision, the ALJ gave "great weight" to Dr.

11   Aguilar's Opinions.  (AR 22, 23) (citing Ex. 9F at 4 [AR 349]).

12   　　　　　　**2.**　　**Pertinent Law**

13   　　　　　　　**a.**　　**Medical Evidence**

14   　　　An ALJ is required to consider "every medical opinion" in a claimant's case

15   record.  20 C.F.R. §§ 404.1527(b), (c), 416.927(b), (c).  In Social Security cases,

16   the amount of weight given to medical opinions generally varies depending on the

17   type of medical professional who provided the opinions, namely "treating

18   physicians," "examining physicians," and "nonexamining physicians."  20 C.F.R.

19   §§ 404.1527(c)(1)-(2) & (e), 404.1502, 404.1513(a); 416.927(c)(1)-(2) & (e),

20   416.902, 416.913(a); Garrison, 759 F.3d at 1012 (citation and quotation marks

21   omitted).  A treating physician's opinion is generally given the most weight.

22   20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Orn v. Astrue, 495 F.3d 625, 631 (9th

23   Cir. 2007) (citations and quotation marks omitted).  An examining, but non-

24   treating physician's opinion is entitled to less weight than a treating physician's,

25   but more weight than a nonexamining physician's opinion.  Garrison, 759 F.3d at

26   1012 (citation omitted).

27   　　　An ALJ may reject the uncontroverted opinion of either a treating or

28   examining physician by providing "clear and convincing reasons that are

7

1  supported by substantial evidence" for doing so.  Bayliss v. Barnhart, 427 F.3d

2  1211, 1216 (9th Cir. 2005) (citation omitted).  Where a treating or examining

3  physician's opinion is contradicted by another doctor's opinion, an ALJ may reject

4  such opinion only "by providing specific and legitimate reasons that are supported

5  by substantial evidence."  Garrison, 759 F.3d at 1012 (citation and footnote

6  omitted).

### b.    Residual Functional Capacity

7

8        Before proceeding to step four and five, an ALJ must first assess the

9  claimant's residual functional capacity.  20 C.F.R. §§ 404.1520(e), 416.920(e);

10 Social Security Ruling ("SSR") 96-8P at *1.  Residual functional capacity

11 ("RFC") represents "the most [a claimant] can still do despite [his or her]

12 limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  When assessing RFC,

13 an ALJ must evaluate "on a function-by-function basis" how particular

14 impairments affect a claimant's abilities to perform basic physical, mental, or other

15 work-related functions.  SSR 96-8P at *1 (citing 20 C.F.R. §§ 404.1545(b)-(d),

16 416.945(b)-(d)).  An ALJ must account for limitations caused by all of a

17 claimant's impairments, even those that are "not severe."  SSR 96-8P at *5

18 (internal quotation marks omitted).  In addition, an ALJ must consider all relevant

19 evidence in the record, including medical records, lay evidence, and the effects of

20 a claimant's subjective symptoms (i.e., pain), that may reasonably be attributed to

21 a medically determinable impairment.  Robbins, 466 F.3d at 883 (citations

22 omitted); see 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

### c.    Step Five

23

24       At step five, the Commissioner has the burden to show that there is other

25 work in significant numbers in the national economy that the claimant can still do.

26 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(a)(4)(v) & (g), 404.1560(c); 20

27 C.F.R. §§ 416.920(a)(4)(v) & (g), 416.960(c); see Zavalin v. Colvin, 778 F.3d

28 842, 845 (9th Cir. 2015) (citations omitted).  One way the Commissioner may

1   satisfy this burden is to obtain the opinions of a vocational expert ("vocational

2   expert" or "VE") about specific representative occupations that a claimant could

3   perform in light of the claimant's residual functional capacity, as well as the

4   availability of such jobs in the national economy.  Osenbrock v. Apfel, 240 F.3d

5   1157, 1162 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1100-01).

6        When a VE is consulted at step five, the ALJ typically poses a hypothetical

7   question at the hearing which asks the VE to identify any occupations that could

8   be performed by an individual who has the same residual functional capacity, age,

9   education, and work experience as the claimant.  See id. at 1162-63 (citations

10  omitted).  The VE's testimony in response may constitute substantial evidence of

11  the claimant's ability to perform the identified occupations as long as the ALJ's

12  hypothetical question included all of the claimant's limitations supported by the

13  record.  See Robbins, 466 F.3d at 886.

14            **3.    Analysis**

15       Here, the ALJ found that plaintiff was "limited to simple, routine tasks with

16  occasional contact with the public and coworkers."  (AR 19, 60).  The ALJ did

17  not, however, expressly include Dr. Aguilar's opinions that plaintiff had moderate

18  limitations in her abilities to "interact with . . . supervisors" and to "respond to

19  work pressure in a usual working setting" in the hypothetical questions posed to

20  the VE at the Post-Remand Hearing[3] or in the residual functional capacity

21  assessment in the Post-Remand Decision.[4]  (AR 19, 60).  It was error for the ALJ

22  not to account for "significant probative" evidence of moderate limitations in

23

24  _____

25       [3]At the Post-Remand Hearing, the ALJ's hypothetical questions stated, in pertinent part,
    that the hypothetical worker was "limited to simple routine tasks [with] limited contact [with the]
26  public and coworkers."  (AR 60).

27       [4]In the Post-Remand Decision the ALJ wrote that plaintiff's residual functional capacity
    was "further limited to simple, routine tasks with occasional contact with the public and
28  coworkers."  (AR 19).

1   plaintiff's abilities to respond to work pressure and interact with supervisors,

2   especially after giving "great weight" to Dr. Aguilar's Opinions generally. See,

3   e.g., Olmedo v. Colvin, 2015 WL 3448093, *8 (E.D. Cal. May 28, 2015) ("When

4   the medical source statements include additional specific [mental] restrictions . . .

5   an ALJ errs if he or she refers only to 'simple, repetitive work,' without addressing

6   the additional concrete limitations set forth in medical opinion.") (citing Brink v.

7   Commissioner Social Security Administration, 343 Fed. Appx. 211, 212 (9th Cir.

8   2009)); see generally Tackett, 180 F.3d at 1101 (An ALJ's depiction of a

9   claimant's characteristics "must be accurate, detailed, and supported by the

10  medical record.") (citation omitted).

11       Defendant argues that the ALJ properly "translated the moderate mental

12  limitations assessed by Dr. Aguilar into concrete work-related limitations."

13  (Defendant's Motion at 4-5); see Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174

14  (9th Cir. 2008) (ALJ may "translate[]" specific mental limitations into a concrete

15  functional restriction if doing so "is consistent with restrictions identified in the

16  medical testimony") (citations omitted).  Defendant argues that the ALJ "likely

17  considered supervisors to be a subset of coworkers" and thus properly accounted

18  for plaintiff's moderate limitation in her ability to interact with *supervisors* "[by]

19  restricting plaintiff to occasional contact with the public and *co-workers.*"

20  (Defendant's Motion at 5 & n.1) (emphasis added).  Nonetheless, the ALJ did not

21  expressly state or reasonably suggest that he considered "supervisors to be a

22  subset of coworkers," as defendant speculates.  (AR 19-23).  Hence the ALJ's

23  non-disability determination may not be affirmed on the ground defendant

24  proffers.  See Garrison, 759 F.3d at 1010 ("We review only the reasons provided

25  by the ALJ in the disability determination and may not affirm the ALJ on a ground

26  upon which he did not rely.") (citation omitted).  Even so, defendant cites no

27  authority which equates a claimant's limitation on the ability to get along with

28  coworkers with an inability to respond well to supervision.  To the contrary, Social

10

Security regulations treat the abilities to respond appropriately to "supervision" and to get along with "coworkers" as separate aspects of the "basic mental demands" of unskilled work, noting that the "substantial loss of ability to meet" *any* basic mental demand could "severely limit the potential occupational base." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); see SSR 85-15 at *4.

Defendant also asserts "it was reasonable for the ALJ to infer that a restriction to simple and routine work [sic] would significantly reduce plaintiff's exposure to pressure at work; thereby, accounting for her moderate difficulties responding to work pressure." (Defendant's Motion at 5). Again, since the ALJ did not expressly make such a finding, the Post-Remand Decision may not be affirmed on defendant's proffered ground. Garrison, 759 F.3d at 1010 (citation omitted). Moreover, the phrase "simple, routine tasks," without more, is not sufficiently specific to permit meaningful review of the ALJ's decision since it cannot reasonably be discerned from the current record whether the ALJ actually intended such phrase to capture plaintiff's specific difficulty responding to work pressure as identified in Dr. Aguilar's Opinions. Nor is such a translation consistent with restrictions identified in the medical evidence. For example, while Dr. Aguilar opined, in part, that plaintiff's "ability to follow simple oral and written instructions was *not limited,*" Dr. Aguilar did not state that plaintiff remained able to do "simple, routine tasks" *despite* the multiple other functional limitations the examining psychiatrist identified in her functional assessment for plaintiff. (AR 349) (emphasis added); cf., e.g., Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (ALJ's finding that claimant would often manifest deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner was not adequately presented when ALJ's hypothetical limited the claimant to simple jobs) (citing Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996); Cavanaugh v. Colvin, 2014 WL 7339072, *4 (D. Ariz. Nov. 26, 2014) (error for ALJ not to include in claimant's RFC "moderate limitation in

11

1   concentration, persistence, or pace" while failing to "provide an explanation as to
2   how a restriction to unskilled work accounted for such moderate mental
3   limitations").

4          In sum, a remand is warranted, at a minimum, because the ALJ's
5   hypothetical question at the Post-Remand Hearing was incomplete – *i.e.*, did not
6   include, among other things, limitations on plaintiff's abilities to "interact with . . .
7   supervisors" and to "respond to work pressure in a usual working setting."  (AR
8   60-61).  Accordingly, the vocational expert's testimony based on such incomplete
9   hypothetical, which the ALJ adopted (AR 24-25), could not serve as substantial
10  evidence supporting the ALJ's determination at step five that plaintiff could
11  perform the occupations of office cleaner and storage facility clerk.  See, e.g.,
12  Robbins, 466 F.3d at 886 (finding material error where the ALJ posed an
13  incomplete hypothetical question to the vocational expert which ignored
14  improperly-disregarded testimony suggesting greater limitations).

15         Finally, this Court cannot find the ALJ's errors harmless.  For example, the
16  vocational expert essentially testified on cross-examination that there would be no
17  jobs available if a hypothetical worker like plaintiff "was unable to . . . complet[e]
18  a normal work day and work week without interruptions from psychologically
19  based symptoms [21 to 40 percent of a work day or work week.]"  (AR 63-64).
20  Moreover, defendant points to no persuasive evidence in the record which
21  otherwise could support the ALJ's determination at step five that plaintiff was not
22  disabled.  See, e.g., Olmedo, 2015 WL 3448093 at *9 (rejecting Commissioner's
23  argument that ALJ's error was harmless "[b]ecause nothing in the record
24  support[ed] a conclusion that Plaintiff had retained the ability to perform unskilled
25  work in light of the additional [moderate mental] limitations identified by
26  [doctors]") (citing, in part, Lubin v. Commissioner of Social Security
27  Administration, 507 Fed. Appx. 709, 712 (9th Cir. 2013)).

28

# V.   CONCLUSION[5]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part and this matter is remanded for further administrative action consistent with this Opinion.[6]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  December 15, 2016

/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[5]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits based thereon would not be appropriate.

[6]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, "additional proceedings can remedy defects in the original administrative proceeding. . . ." Garrison, 759 F.3d at 1019 (citation and internal quotation marks omitted).